UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PARKER TIKSON,<br><br>                Plaintiff,<br>    v.<br><br>AMICA MUTUAL INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. 2:23-cv-01464-TL<br><br>ORDER ON MOTION TO DISMISS OR TRANSFER |

This case involves a dispute between Plaintiff Parker Tikson and his car insurance provider Defendant Amica Mutual Insurance Company ("Amica"). The matter is before the Court on Defendant's Motion to Dismiss. Dkt. No. 7. Having considered the submissions of the Parties, including Mr. Tikson's response (Dkt. No. 15), and Amica's reply (Dkt. No. 17), the Court DENIES Defendant's motion without prejudice and STAYS all proceedings in this case.

                **I.    BACKGROUND**

On October 29, 2017, Mr. Tikson was in a car accident in King County, Washington, with an underinsured motorist. Dkt. No. 15 at 2. A dispute then arose between Mr. Tikson and

Amica regarding the amount of coverage he was due per the Uninsured Motorist ("UIM") provision of his insurance policy. *Id.* at 2–3. That dispute ultimately led Mr. Tikson to file a complaint against Amica in King County Superior Court for compensatory damages under the UIM policy, which Amica removed to the District Court for the Western District of Washington. *See Tikson v. Amica Mutual Insurance Company* ("*Tikson* I"), No. C21-1584, Dkt. No. 1 (W.D. Wash. Nov. 23, 2021).[1] The Parties agreed to pursue binding arbitration pursuant to the terms and conditions of the insurance policy and stipulated to the dismissal of *Tikson* I without prejudice. Dkt. No. 15 at 2; *see also Tikson* I, No. C21-1584, Dkt. Nos. 14–15.

On January 25, 2023, the Parties arbitrated the UIM claim with retired King County Superior Court Judge Paris K. Kallas. Dkt. No. 15 at 4. Judge Kallas determined that Mr. Tikson's damages and losses totaled $468,006.40. *Id.* at 4. On March 15, 2023, Mr. Tikson responded to Amica's request for payment information by offering to release Amica from an insurance bad faith claim if Amica would pay the full amount of damages determined in arbitration within 15 days. *Id.* at 5. Amica instead sent Mr. Tikson a check in the amount of $195,000 with a letter stating that it had a different view of the matter. *Id.*

On July 7, 2023, Amica filed a complaint for declaratory judgement in the United States District Court for the Northern District of Illinois asking the court to find that it had satisfied its contractual obligations under Mr. Tikson's insurance policy by paying him $195,000. *Id.* at 4; *see also Amica Mutual Insur. Co. v. Tikson* ("*Amica* I"), No. C23-4365, Dkt. No. 1 (N.D. Ill. Jul. 7, 2023). Mr. Tikson has since moved to dismiss that case for lack of personal jurisdiction. Dkt. No. 15 at 5–6; *see also Amica* I, C23-4365, Dkt. No. 16. That motion is still pending.

---

[1] The Court generally takes judicial notice of all filings in the two related cases referenced throughout the Parties' briefing and this Order pursuant to Federal Rule of Evidence 201(b)(2).

ORDER ON MOTION TO DISMISS OR TRANSFER - 2

1  On August 22, 2023, Mr. Tikson sent a notice pursuant to Washington State's Insurance
2 Fair Conduct Act ("IFCA") to the Washington State Office of the Insurance Commissioner and
3 Amica, a statutory prerequisite to filing an insurance bad faith claim in Washington. Dkt. No. 15
4 at 5; *see also* RCW 48.30.015(8)(a). On September 19, 2023, Mr. Tikson filed this matter raising
5 claims of breach of contract, insurance bad faith under IFCA, and violations of Washington's
6 Consumer Protection Act ("CPA"). Dkt. No. 7 at 4; *see also* Dkt. No. 1 ¶¶ 5.2–8.9. Amica now
7 moves to dismiss, or in the alternative, to have the case transferred to the Northern District of
8 Illinois. Dkt. No. 7. Mr. Tikson opposes dismissal and transfer. Dkt. No. 15. Amica replies to
9 Mr. Tikson's opposition by offering a third alternative, requesting the Court stay proceedings in
10 this case until the personal jurisdiction issue is resolved in *Amica* I. Dkt. No. 17.

## II. LEGAL STANDARDS

12  Amica raises two primary arguments in its motion to dismiss: (1) that Mr. Tikson was
13 required to raise his instant claims as compulsory counterclaims in *Amica* I and is thusly barred
14 from asserting them here per Federal Rule of Civil Procedure 13(a); or, in the alternative, (2) that
15 the Court should apply the "first-to-file" rule to either dismiss, transfer, or stay the instant case in
16 the interest of judicial efficiency, arguing specifically for transferring the case to the Northern
17 District of Illinois pursuant to 28 U.S.C. § 1404(a). Dkt. No. 7 at 5–10; Dkt. No. 17 at 2–3.

### A. Rule 13 Compulsory Counterclaims

19  The defendant in a civil suit must assert counterclaims arising out of the same
20 "transaction or occurrence" as the claims in the underlying suit or risk being barred by res
21 judicata from asserting the claims in a future action. Fed. R. Civ. P. 13(a); *see also Mitchell v.*
22 *CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010). There are two
23 compulsory counterclaim exceptions: (1) if the claim was already the subject of a pending action,
24 or (2) if "the opposing party sued on its claim by attachment or other process that did not

establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule." Fed. R. Civ. P. 13(a)(2)(A)–(B).

**B.     Transfer Under 28 U.S.C. § 1404(a)**

Under 28 U.S.C. § 1404(a), a district court has discretion to adjudicate transfer motions on a case-by-case consideration of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). The Ninth Circuit has enumerated eight factors to consider in determining whether transfer is appropriate:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* A court must also consider the presence of any forum selection clause and the relevant public policy of the forum state, if any. *Id.*

**C.     First-to-file Rule**

There is a "generally recognized doctrine of federal comity" which has judicially developed over time known as the "first-to-file" rule. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). When separate cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the later filed case in the interest of efficiency and judicial economy. *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). There are three prerequisite conditions for the first-to-file rule to apply: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). However, this rule is not absolute. Even when the three threshold

factors are met, a court may dispense with the rule "for reasons of equity," such as when the first-filed case is brought in bad faith, as an anticipatory suit, or as the result of forum shopping. *Id.* at 625–26. The Ninth Circuit recognizes that in deciding first-to-file issues courts should maintain flexibility and discretion. *Id.* at 627–28. "Circumstances and modern judicial reality []may demand that [a district court] follow a different approach from time to time." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

### III.  DISCUSSION

Amica moves to dismiss on Rule 13 grounds because the claims alleged by Mr. Tikson arise out of the same transaction or occurrence that is the subject of the earlier-filed action it initiated in Illinois. Dkt. No. 7. Alternatively, Amica argues that this matter should be transferred to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a) "for the convenience of the parties and witnesses, in the interest of justice." *Id.* at 8. Amica argues that the application of the factor-balancing test weighs in favor of transferring the case.[2] *Id.* at 9. Amica also argues that the first-to-file rule should apply to this matter because Amica filed their declaratory action before Mr. Tikson noted his IFCA complaint and initiated this matter. *Id.* at 8.

Mr. Tikson asks this Court to deny Amica's motion to dismiss because the Illinois court does not have personal jurisdiction over him as a non-resident defendant. Dkt. No 15 at 7. Mr. Tikson also argues that the 28 U.S.C. § 1404(a) factor-balancing test weighs in favor of

---

[2] The Court notes here, and throughout this order, that Amica does not address all of the relevant factors.

denying the motion to transfer.[3] *Id.* at 9–10.

A.      Rule 13

The Court cannot find that Mr. Tikson's claims are barred by Rule 13 at this juncture. As an initial matter, the Parties do not appear to contest whether Mr. Tikson's claims meet the "same transaction or occurrence" requirement. *Compare* Dkt. No. 7 at 6–7 (raising the argument) *with generally* Dkt. No. 15 (failing to address the issue). Nevertheless, Rule 13 provides an exception that might act to save Mr. Tikson's claims in any event, should the Illinois court rule in his favor on his motion to dismiss for lack of personal jurisdiction.

The second exception to Rule 13's compulsory counterclaim requirement includes two elements: (1) that "the opposing party sued on its claim by attachment *or other process* that did not establish personal jurisdiction over the pleader on that claim," and (2) that the pleader had not yet raised any other counterclaim in the action. Fed. R. Civ. P. 13(b)(2) (emphasis added). Here, Mr. Tikson has not yet answered the complaint in *Amica* I, and therefore has not yet raised any other counterclaims in that action. Instead, Mr. Tikson has moved to dismiss that action on personal jurisdiction grounds.[4] Thus, if his motion is successful, he will be able to show that Amica's service of process in that action failed to establish personal jurisdiction over him, allowing for application of the Rule 13 exception to his present claims. Because the Court cannot determine application of the Rule 13 exception at this time, Amica's motion to dismiss on these grounds is DENIED without prejudice.

---

[3] The Court notes here, and throughout this Order, that Mr. Tikson fails to directly respond to Amica's first-to-file arguments.

[4] Mr. Tikson spends a considerable portion of his response in opposition to the present motion arguing that the court in *Amica* I cannot assert personal jurisdiction over him in that case. *See* Dkt. No. 15 at 6–9. Consequently, Amica addresses those arguments in reply. Dkt. No. 17 at 3–7. That question is not for this Court to decide.

**B.     28 U.S.C. § 1404(a) Factor-Balancing Test**

Although Amica relies primarily on the first-to-file rule to support its alternate request to transfer the case in lieu of dismissal, it notes the 28 U.S.C. § 1404(a) factors in its briefing, focusing exclusively on the first factor as weighing in favor of transferring. Dkt. No. 7 at 9. In response, Mr. Tikson directly addresses most of the remaining factors, arguing that the second, third, fourth, sixth, seventh, and eighth factors weigh against transfer. Dkt No. 15 at 9–12. Neither Party addresses the fifth or seventh factors. Therefore, the Court considers those two factors as neutral for purposes of this motion. The parties also did not address any public policy of the forum state, so the Court also considers that factor neutral.

Regarding the first factor, the location where the relevant agreements were negotiated and executed, Amica highlights that the insurance policy at issue was negotiated and executed in Illinois. Dkt. No. 7 at 9. Mr. Tikson does not dispute this fact. Thus, this factor weighs in favor of transfer.

The second factor, the state most familiar with the governing law, likely weighs against transfer. Mr. Tikson's IFCA and CPA claims arise under Washington law. Dkt. No. 15 at 11. Additionally, Mr. Tikson argues that this court is the most familiar with the governing law because it has already invested time and resources with this case having dismissed it without prejudice once before. *Id.*; *see also Tikson* I, No. C21-1584, Dkt. Nos. 14–15. Although it does not address this argument to any specific transfer factor, Amica asserts that all federal courts are equally qualified to adjudicate the laws of another jurisdiction fairly and competently. Dkt. No. 7 at 9. Given the history of this case and the issues involved, the Court finds that this factor weighs against transfer.

The third factor considers the Plaintiff's chosen forum; as Plaintiff, Mr. Tikson receives substantial deference for his chosen forum under the test. *Decker Coal Co. v. Commonwealth*

*Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Further, Mr. Tikson argues that all the operative events occurred in Washington, which is likely the most convenient forum for any relevant witnesses. Dkt. No. 15 at 10–11. Amica also appears to "concede[] that Washington is an appropriate alternative forum."[5] Dkt. No. 17 at 8. The Court therefore concludes that this factor weighs against transfer.

The fourth factor focuses on the Parties' respective contacts with the current and potential forums. Mr. Tikson points to the fact that he is a resident of Washington state, all of his medical providers are in Washington, and he has paid taxes in Washington every year since 2016. Dkt. No. 15 at 12. Mr. Tikson also argues that Amica advertises and sells insurance policies in Washington. *Id.* Finally, Mr. Tikson claims he has had no contacts with Illinois since his parents moved in 2021. *Id.* Amica argues that Mr. Tikson availed himself of Illinois law when he entered the insurance policy, and that the policy is sufficient to satisfy personal jurisdiction over him. Dkt. No. 17 at 6. The Court also considers the fact that Amica has previously availed itself of this Court's jurisdiction in *Tikson* I, when it removed Mr. Tikson's prior state court action, which led to the underlying arbitration that also occurred in Washington. Thus, both parties clearly have significant contacts with Washington, whereas the question of Mr. Tikson's contacts with Illinois—to the extent it goes to establishing personal jurisdiction—is still pending before the court in *Amica* I. Therefore, at least at this time, this factor weighs against transfer.

The sixth factor concerns the cost of litigation. Courts generally disfavor transferring when the transfer would merely shift, not eliminate, the cost and inconvenience. *Decker Coal*, 805 F.2d at 843. Mr. Tikson argues that paying for counsel in Illinois is a financial burden. Dkt. 15 at 12. Mr. Tikson has paid a retainer and pays hourly fees to his Illinois attorneys, and he

---

[5] The Court notes that Amica was not addressing this element of the 28 U.S.C. § 1404(a) factors when it made this assertion.

ORDER ON MOTION TO DISMISS OR TRANSFER - 8

argues that Amica has more resources and is indifferent to the cost associated with transferring venue. *Id.* Amica argues that the action in Illinois likely does not require Mr. Tikson to be physically available as a witness and with the advent of virtual hearings any burden on Mr. Tikson would be minimal.[6] Dkt. No. 17 at 7. Here, Mr. Tikson's arguments run counter to his assertion that this factor weighs against transfer. On the contrary, should the Court deny Amica's transfer request, Mr. Tikson would be required to continue prosecuting both cases unless and until the court in *Amica* I rules in his favor on his pending motion to dismiss. Thus, at this time, this factor weighs in favor of transfer.

Finally, the eighth factor, ease of access to sources of proof or evidence, focuses on the location of witnesses and documentary evidence. *Jones*, 211 F.3d at 499. Mr. Tikson argues that all the evidence relevant to proving damages are in Washington state and that discovery is likely to focus on the conduct of Washington-based adjustors applying Washington insurance law. Dkt. No. 15 at 11. *Id.* Thus, this factor weighs against transfer.

On balance, only two of the eight factors favor transfer, whereas four weigh against, at least at this point in the proceedings considering the unresolved personal jurisdiction issue in *Amica* I. The Court, therefore, in its discretion, DENIES Amica's motion for transfer under 28 U.S.C. § 1404(a).

**C.     First-to-File Rule**

Amica's primary argument for transfer, though, arises under the so-called first-to-file rule. The Court first considers three threshold factors in deciding whether the rule applies: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade*, 946 F.2d at 625. There is no dispute that Amica filed its declaratory action in

---

[6] Again, the Court notes that Amica does not address these arguments to the 28 U.S.C. § 1404(a) transfer factors, but the Court nonetheless considers them here as relevant.

ORDER ON MOTION TO DISMISS OR TRANSFER - 9

1   Illinois before Mr. Tikson initiated the instant matter, the two cases involve the exact same
2   parties, and that the claims in both cases arise from the same set of facts. Thus, the first-to-file
3   rule would generally favor granting Amica's requested relief.
4       Ultimately, the Court has ample discretion and may chose not to apply the rule "for
5   reasons of equity." *Alltrade*, 946 F.2d at 628. Typical equitable exceptions include bad faith,
6   anticipatory suits, and forum shopping. *Id.* Mr. Tikson does not specifically respond to Amica's
7   first-to-file arguments. *See* Dkt. No. 15. However, Mr. Tikson does allege that Amica's actions
8   could be seen as "[v]enue shopping." *Id.* at 2. Specifically, Mr. Tikson highlights that Amica had
9   previously assented to this Court's jurisdiction by removing his previous lawsuit from
10  Washington state court, never sought to transfer that case to Illinois, and only filed its out-of-
11  state declaratory action after receiving an unfavorable arbitration decision in Washington. *Id.*
12  at 2–5.
13      Other facts raise the inference that Amica intentionally teed-up this very forum selection
14  issue by anticipatorily filing its declaratory action in Illinois, despite being on notice of
15  Mr. Tikson's potential Washington-based IFCA claim. For example, Mr. Tikson offered to waive
16  his insurance bad faith claim under Washington law in exchange for a payment consistent with
17  the amount of damages determined by the arbitrator. Dkt. No. 15 at 5. In response, despite
18  having previously availed itself of this Court's jurisdiction, Amica paid what it believed to be its
19  contractual obligation and then appears to have raced to file its declaratory action in Illinois (not
20  Washington) before Mr. Tikson initiated the prerequisite administrative process for bringing his
21  IFCA claim. *Id.* at 4–5; Dkt. No. 7 at 3–4. Additionally, the convenience and availability of
22  witnesses weighs in favor of the case being heard in Washington because the accident occurred
23  in Washington, previous matters were decided in Washington, and there is no question as to this
24  Court's jurisdiction over the subject matter and parties.

That said, the Court recognizes that "the 'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology*, 611 F.2d at 750. In applying the rule, the Court has "discretion to transfer, *stay*, or dismiss" the potentially duplicative action. *Cedars-Sinai*, 125 F.3d at 769 (emphasis added). In this instance, the Court feels the correct approach is to wait at least until the personal jurisdiction issue is resolved in the earlier-filed case before deciding how to proceed in this matter. Therefore, the Court DENIES Amica's request to transfer the case per the first-to-file rule without prejudice and STAYS proceedings until the court in *Amica* I renders a decision on the personal jurisdiction issue.

### IV.    CONCLUSION

Accordingly, the Court DENIES Defendant's motion (Dkt. No. 7) and STAYS all proceedings in this matter until the United States District Court for the Northern District of Illinois enters a decision on Mr. Tikson's pending motion to dismiss. The Parties shall file with the Court a joint status report within **fourteen (14) days** of the entry of the Illinois court's order.

Dated this 8th day of April 2024.

Tana Lin
United States District Judge